Gisela DEVORA, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. 01 CIV.2660(GWG).

United States District Court,
S.D. New York.

May 22, 2002.

---

Harlem Legal Services, New York City, By Kelly J. Poff, for Plaintiff.

James B. Comey, Jr., United States Attorney, Southern District of New York, New York City, By Lorraine S. Novinski, Assistant United States Attorney, for Defendant.

## OPINION AND ORDER

GORENSTEIN, United States Magistrate Judge.

### Introduction

Plaintiff Gisela Devora brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her disability and Supplemental Social Security benefits.[1] The Commissioner has moved for judgment on the pleadings on the ground that her decision was supported by substantial evidence. Devora opposes this motion and has requested that the matter be remanded for a new hearing. On February 21, 2002, the parties consented to determination of this case by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's motion is denied and Devora's motion for a remand is granted.

## I. FACTUAL BACKGROUND

### A. Procedural History

On October 19, 1998, Devora submitted applications for disability benefits and for

---

**1.** Because Jo Anne B. Barnhart became the Commissioner of Social Security on November ber 9, 2001, she is substituted as defendant in this action pursuant to Fed.R.Civ.P. 25(d)(1).

supplemental security income benefits based on disability. R. 58–61, 163–66.[2] These applications were denied initially and on reconsideration. R. 37–40, 43–46. Subsequently, Devora requested a hearing before an Administrative Law Judge ("ALJ"). R. 47. The hearing was held on July 1, 1999. R. 19–34. Devora, who spoke through an interpreter at the hearing, appeared without an attorney or any other representative. R. 19, 21. On September 14, 1999, the ALJ issued a decision finding that Devora was not entitled to disability benefits. R. 8–17. This decision became final on December 6, 2000, when the Appeals Council denied Devora's request for review. R. 4–6. Devora presented a timely complaint to the Pro Se Office of this Court on February 5, 2001. An attorney filed a notice of appearance on behalf of Devora on May 2, 2001.

### B. *Evidence Presented at the Hearing*

#### 1. *Testimony*

Devora was born on November 11, 1942, in Santo Domingo, Dominican Republic. R. 24. She had been in the United States since 1977. R. 25. She completed four years of school. R. 26. Devora does not speak any English. R. 25.

Devora's previous employment was as a sewing machine operator and a floor worker in a clothing factory. R. 25, 67, 87. She worked at these positions from January 1977 to May 1998. R. 67, 87. Devora's work in the clothing factory required seven hours a day of standing and one hour of sitting. R. 67. The positions did not require any walking. R. 67. Devora was not required to lift more than 10 pounds during her employment. R. 67. Devora stopped working in 1998, when she was laid off and began collecting unemployment insurance benefits. R. 25, 26.

According to the interpreter at the hearing, Devora had stated to him while reviewing her case file that her employer had laid her off "because she was ill on the job and he saw that she wasn't strong and she wasn't able to do the job." R. 26.

Devora stated that when she walks she gets a pain in the left side of her neck. R. 30. She also testified that she could not stand up for any length of time. R. 30. She stated that if she sits for a while she has to lie down and if she stands for "a second" she has to sit back down. R. 30. She was also not able to carry anything and could "barely walk" due to pain in her back. R. 30. She was able to lift 5 to 10 pounds. R. 30.

In terms of daily activities, Devora stated that she went to church. R. 31. She was advised that she should walk for exercise. R. 32. She was able to read and watch TV a little. R. 31. At home, she prepared meals and washed dishes. R. 31–32. She was barely able to wash and dress herself, at times because of "incredible" pain in her back. R. 32. Sometimes her daughter or a friend would help her get dressed. R. 32. She also complained of pain in the bottom of her foot and pain in the bone of her right leg "like it's going to explode" if she stood for too long. R. 32.

Devora stated that she had not been treated for depression. R. 30. She took one 400 milligram tablet of Ibuprofen every six hours, two 40 milligram tablets of Monopril per day and 500 milligrams of calcium twice a day. R. 27–28.

Devora claimed she had previously been treated for her impairments by a Dr. Ralph Barrauco. R. 23. However, no records were received from Dr. Barrauco in response to two separate requests made by the ALJ. R. 124–25. Devora then went

---

**2.** "R." refers to the administrative record re-   lating to Devora's application.

to Harlem Hospital, but ceased treatment there because "they didn't understand me." R. 23. Subsequently, she began treatment at Metropolitan Hospital Center. R. 23.

During her testimony, the ALJ requested that Devora have her doctor fill out a form entitled "Medical Assessment of Ability to Do Work Related Activities, Physical," R. 29–30, 32–33, stating that the form was "very important." R. 29. The ALJ stated that there was a "good chance" that she would be found disabled, but that she had to have the right documentation. R. 29. He also stated that she should not "worry about it" but should "just do the best" that she could to get her doctor to fill out the form. R. 33.

### 2. *Medical Records*

Devora's medical records reflected that she was seen at Harlem Hospital on October 6, 1998. R. 117–18. She reported a two-year history of joint pain in both shoulders, the lower back, her wrists and knees. R. 118. She was not in any distress during that examination. R. 118. The examining physician found that Devora was obese and had a crepitant right knee but that she did not have any swelling or reduction of range of motion. R. 118. The examining physician's assessment was that Devora was suffering from obesity, arthritis and hypertension. R. 117. Devora was recommended to lose weight, exercise and adhere to a low salt diet. R. 117. It was also recommended that she take medicine for her high blood pressure. R. 117.

On October 22, 1998, Devora began receiving treatment at Metropolitan Hospital Center. R. 22, 76, 151–54. On her first visit, Devora's blood pressure was 150/100. R. 152. She stated that she had not taken any medication since October 6, 1998. R. 152. A week later when she was exam-

ined, her blood pressure was listed as 140/90. R. 150. Devora denied any headaches, dizziness, chest pain or shortness of breath. R. 150.

On December 31, 1998, also at Metropolitan Hospital Center, Devora reported pain in her legs and hips that was worse with movement but improved with rest and nonsteroidal inflammatory medication. R. 148. She had crepitation in the knees, but she exhibited full range of motion and there were no effusions. R. 149. Her blood pressure was 140/90 and she weighed 219 pounds. R. 149. Devora's blood pressure medication was changed and an exercise program was recommended. R. 149. She returned for another blood pressure reading on January 14, 1999, where she reported that she was taking her medication and had no complaints at that time. R. 146. Her blood pressure was 150/100. R. 146.

Devora was seen by a dietician on February 15, 1999. R. 145. She was measured to be 61″ tall and weighed 216 pounds, which was 187% of her desirable body weight. R. 145. She was instructed by the dietician on a weight reduction diet, low fat cooking methods and healthy, balanced meals. R. 145.

On February 26, 1999, Devora again visited Metropolitan Hospital Center and presented with complaints of knee pain that increased with walking. R. 140. She was found to have crepitus of the right knee and bilateral pitting edema. R. 140. She denied any shortness of breath, palpitations or chest pain. R. 140. Her blood pressure medication was increased; diet and exercise were recommended for her obesity. R. 141. The treating physician prescribed weight loss and Motrin as treatment for Devora's degenerative joint disease. R. 141. Devora returned for refills of her medicine on April 28, 1999, but

did not present any additional complaints at that time. R. 138.

On her next visit to Metropolitan Hospital Center, which took place on May 21, 1999, Devora's health problems were identified as hypertension, obesity and degenerative joint disease. R. 134. Her weight had increased to 219 pounds. R. 134. Her blood pressure was 140/96. R. 134. Crepitus of her right knee with inflammatory signs and bilateral pitting edema were also noted. R. 134. The record stated that Devora had been noncompliant with her low cholesterol diet and her dietary restrictions were reinforced. R. 135. When she returned on June 25, 1999 for a blood pressure reading her blood pressure remained at 140/90. R. 133.

On July 21, 1999, at her examination at Metropolitan Hospital Center, she was 217 pounds and her blood pressure was 130/90. R. 132. Devora denied chest pain, shortness of breath or any other breathing problems. R. 132. She presented with bipedal pitting edema. R. 132. Her treating physician assessed Devora as having hypertension and hyperlipemia; he recommended diet, exercise and weight loss. R. 132.

3. *Examination by Consultative Physician*

On November 4, 1998, Devora was examined by Dr. Grossman, a consultative physician. R. 91–97. Devora reported a two year history of back pain, joint pain and hypertension. R. 91. Devora's gait and station were normal. R. 92. There was no spasm or tenderness in the spine and the range of motion was normal. R. 92. Devora had full range of motion in all joints and no swelling. R. 93. Her muscle strength was adequate and no muscle

wasting was present. R. 92. Devora was able to make a full fist bilaterally, stand on her toes and perform a full squat. R. 93. An EKG showed a normal sinus rhythm with a heart rate of 75. R. 94. X-rays showed degenerative changes with joint effusion in the right knee and degenerative, discogenic and positional changes in the lumbosacral spine. R. 95. However, Dr. Grossman found that Devora's history of back pain and joint pain were not correlated by his clinical findings. R. 93. Her blood pressure was elevated, however, and she was advised to seek medical attention in regard to that issue. R. 93–94. Dr. Grossman's final opinion as to Devora's impairments was that she had no disability with respect to functions such as lifting, carrying, sitting, standing or walking. R. 94.

4. *Re–Opening The Record*

Following the July 1, 1999 hearing, the ALJ re-opened the record on August 26, 1999, to admit into evidence medical records from Metropolitan Hospital Center dated November 12, 1998 to August 23, 1999. R. 33.[3] On August 27, 1999, the ALJ re-opened the record once again to state that "Exhibit 8–F—Medical assessment of ability to do work related activities, physical," was "not going to be admitted as evidence because the form was not filled out by the doctor." R. 34. The record was then closed and the hearing transcript certified. R. 34.

C. *The ALJ's Decision*

On September 15, 1999, the ALJ issued his decision on Devora's claim for disability benefits. The ALJ determined that Devora "has not been under a 'disability' under

---

**3.** The hearing transcript mistakenly refers to the re-opening dates as August 26 and 27, 1997.

sections 216(i) and 223 of the Social Security Act since May 18, 1998 through the date of this decision." *Id.* at 16. The findings of the ALJ in support of this decision were as follows:

1. The claimant will be last insured for Title II insurance benefits on December 31, 2002.

2. The claimant has not performed any substantial gainful activity since May 18, 1998, the alleged onset date of disability. 20 CFR §§ 404.1571, 416.971.

3. The claimant's impairment that is considered "severe" under the Social Security Act is degenerative joint disease. The claimant also has the following "non-severe" impairments: 1) hypertension; 2) obesity; and 3) hyperlipemia. 20 CFR §§ 404.1520(c), 416.920(c), 404.151521, 416.921, Social Security Ruling 96–3p.

4. The claimant's impairment does not meet or equal the appropriate medical findings contained in 20 CFR part 404, Appendix 1 to subpart P (Listing of Impairments).

5. The claimant's allegations of symptoms and limitations are not supported by the objective medical evidence or by her own statements, admissions or testimony.

6. The objective medical evidence establishes that the claimant has a current residual functional capacity for exertionally light work as the term is defined by the Regulations. 20 CFR §§ 404.1567(b), 416.967(b).

7. The claimant can perform her past relevant work experience, which included that of an industrial sewing machine operator, which she performed for 7 years, and which she described as exertionally light, unskilled work, and that of a floor manager, which she performed for 12 years, and which she de-

scribed as exertionally light, semi-skilled work. 20 CFR §§ 404.1567, 404.1568, 416.967, 416.968.

8. The claimant has not been under a "disability" as is defined in the Social Security Act at any time since May 18, 1998, the alleged onset date of disability, through the date of this decision. 20 CFR §§ 404.1520, 416.920.

9. The claimant is not entitled to Title II period of disability or disability insurance benefits, nor is she eligible for Title XVI supplemental security income benefits at any time since May 18, 1998, the alleged onset date of disability.

R. 16–17. The ALJ's decision became final on December 6, 2000, when the Appeals Council denied Devora's request for review. R. 4–6.

## II. THE APPLICABLE LEGAL STANDARDS FOR ACTIONS BROUGHT PURSUANT TO 42 U.S.C. 405(g)

### A. Standards Governing Evaluation of Disability Claims by the ALJ

■ An individual is determined to be disabled under the Social Security Act if he or she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment suffered by the person must be such that the individual

is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy

exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). In determining whether an individual is disabled under the Social Security Act, the Commissioner is required to evaluate the claim by considering "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir.1983) (per curiam).

The Commissioner is required to use the five-step process outlined in regulations to the Social Security Act in considering a disability claim. *See* 20 C.F.R. § 416.920; *see also Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir.2000) (describing five step evaluation process). In evaluating the claim, the ALJ must first determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. § 416.920(b). If the claimant is not, the ALJ must decide if the claimant has a severe impairment, which is an impairment that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpt. P, App. 1, or is equivalent to one of the listed impairments, a claimant must be found disabled and the inquiry stops there. 20 C.F.R. § 416.920(d). If the claimant's impairment is not listed or is not equal to one of the listed impairments, the Commissioner must review the claimant's residual functional ability to determine if the claimant is able to do work he or she has done in the past. If the claimant is able to do such work, he or she is considered not to be disabled. 20 C.F.R. § 416.920(e). Finally, if the claimant is unable to perform past work, the Commissioner must decide if the claimant's residual functional capaci-ty permits the claimant to do other work. If the claimant cannot perform other work, the claimant will be deemed disabled. 20 C.F.R. § 416.920(f). The claimant bears the burden of proof on all steps except the final one (that is, proving that there is other work the claimant can perform). *Curry*, 209 F.3d at 122.

## B. *Standard of Court Review*

██ The scope of review of the Commissioner's final decision by a court is limited to determining whether there is "substantial evidence" to support the Commissioner's determination. *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner ... as to any fact, if supported by substantial evidence, shall be conclusive"); *accord Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999); *Brown v. Apfel*, 174 F.3d 59, 61 (2d Cir.1999); *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir.1998). Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consol. Edison Co. v. NLRB.*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). The role of the reviewing court is therefore "quite limited and substantial deference is to be afforded the Commissioner's decision." *Burris v. Chater*, 1996 WL 148345, at *3 (S.D.N.Y. Apr.2, 1996). This deference extends not only to factual findings but also to conclusions, which can be drawn from those facts. *See Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir.1966). If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even where substantial evidence supporting the claimant's position also exists. *Alston v. Sullivan*, 904 F.2d 122, 126 (2d

Cir.1990); *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir.1982). Although the court is not to conduct a *de novo* review of the underlying claim, *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir.1991), the reviewing court is required to "examine the entire record, including contradictory evidence" in order "to determine whether the findings are supported by substantial evidence." *Brown*, 174 F.3d at 62 (citation and internal quotation marks omitted).

However, "where there is a reasonable basis for doubt whether the ALJ applied the correct legal principles, application of the substantial evidence standard to uphold a finding of disability creates an unacceptable risk that a claimant will be deprived of the right to have his disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987); *see also Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir.1999) (reviewing court precluded from deferring to the Commissioner's decision where the Commissioner has failed to apply the correct legal standard in reaching a determination). Accordingly, the initial task of a court reviewing the denial of Social Security disability benefits is to "satisfy [itself] that the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Echevarria v. Sec. of Health and Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (citation and internal quotation marks omitted). Where the reviewing court determines that an error of law has deprived the claimant of a full and fair hearing, the court should reverse the Commissioner's decision and remand the matter for a new hearing. *See Havas v. Bowen*, 804 F.2d 783, 787 (2d Cir.1986); *Aubeuf v. Schweiker*, 649 F.2d 107, 116 (2d Cir.1981).

### C. Duty to Develop Record

■ An ALJ has an affirmative duty to develop the administrative record in a disability benefits case. *Tejada*, 167 F.3d at 774. The non-adversarial nature of a Social Security hearing requires the ALJ "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). This duty applies even in cases where the claimant is represented by counsel. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). When the claimant appears *pro se*, as was the case here, the ALJ has a heightened duty to develop the administrative record prior to making· a determination. *See Cullinane v. Sec. of Dep't of Health and Human Servs.*, 728 F.2d 137, 139 (2d Cir.1984) (remand for new hearing appropriate where ALJ failed to assist *pro se* litigant in securing all relevant medical testimony); *see also Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir.1990) ("[W]hen the claimant appears *pro se*, suffers ill health and is unable to speak English well ...[the court has] a duty to make a searching investigation of the record to make certain that the claimant's rights have been adequately protected.") (citations and internal quotation marks omitted).

■ This duty to develop the administrative record requires the ALJ to make "every reasonable effort to help [the claimant] get medical reports from [his or her] own medical sources." *Perez v. Chater*, 77 F.3d at 47 (quoting 20 C.F.R. § 404.1512(d)). The ALJ is authorized to issue subpoenas to ensure not only the production of a claimant's medical records, but also to obtain the testimony of necessary witnesses. *See* 42 U.S.C. § 405(d).

■ The duty of the ALJ to develop the record is particularly important when it comes to obtaining information from a

claimant's treating physician. This is because, in making a determination as to a claimant's disability, the Commissioner must follow the "treating physician" regulations located at 20 C.F.R. § 404.1527. These regulations state as follows:

> If we find that a treating source's opinion of the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(d)(2). If the Commissioner does not give controlling weight to the treating physician's opinion, the regulations require the Commissioner to consider various factors in determining what weight the treating physician's opinion should be given. *Id.* The "treating physician" regulations have been approved by the Second Circuit. *Schisler v. Sullivan,* 3 F.3d 563, 568–69 (2d Cir.1993)

The ALJ's duty to develop the administrative record encompasses not only the duty to obtain a claimant's medical records and reports but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity. *See, e.g., Cruz,* 912 F.2d at 11; *Echevarria,* 685 F.2d at 755–56. Where the ALJ has failed to develop the administrative record, remand for a new hearing is appropriate. *See Rosa v. Callahan,* 168 F.3d 72, 80–81, 83 (2d Cir.1999).

III. *ANALYSIS OF DEVORA'S CLAIMS*

A. *The ALJ's Duty to Develop the Record*

Devora was treated almost every month at Metropolitan Hospital Center for close to a year for the impairments that constitute her disability claim. *See* R. 99–107, 132–52. The medical evidence in this case consisted of the raw records from Metropolitan Hospital Center, Harlem Hospital Center and the report of a consultative physician. R. 91–97, 99–107, 117–18, 121–22, 132–52. The ALJ recognized that he had an obligation to develop the record more fully: specifically, through a report from a treating physician that would describe Devora's condition. Although the Metropolitan Hospital records arrived only because of the ALJ's subpoena, R. 128, no report from a treating physician was ever obtained. The effort to obtain such a report is reflected in the following colloquies with Devora:

ALJ: Would you be able to give the doctor a form [setting forth the doctor's view on Devora's ability to perform basic work activities] for, for the doctor to fill out?

Devora: Which day?

ALJ: Well, the, for, for your, the medical doctor. When you go back this month.

Devora: Yes.

ALJ: What I'd like for you to do, if you could, and Mr. Ferrer [the interpreter], could, could you approach the bench, please?

Interpreter: Yes sir.

ALJ: I need your assistance here.

Interpreter: Yes sir.

ALJ: Would you give that to Ms. Devora and just tell her that, to, to give that to the doctor. If she can get to the hospital sooner than that, that would help. But if she can't, just wait until her, for her July 21st appointment. And if she could get there sooner, it would, boy it would make a big deal of difference. And have the doctor fill that out and send that back to us. It's very important.

Devora: What happens is sometimes they don't want to, they don't want to attend to you if you don't have an appointment. But I'm going to try.

ALJ: Do, do the best you can to get in there sooner. If not then, you know, we'll, we'll wait. You're, you will, there's a good chance you'll be found disabled but we can't find you disabled unless we have the right documentation. The sooner that gets done, the sooner we write the decision, the sooner all things happen. Okay?

R. 29–30.

At the end of the hearing the ALJ stated:

ALJ: ... Part of what you're asking for is insured benefits and *it looks like you, you will probably get them* but we can't do anything until we have the, the medical documentation. *So don't worry about it, just, just do the best you can to, to get your doctor to fill that out. Okay?*

R. 32–33. The form in question, which the ALJ was seeking to have completed by one of Devora's doctors, was a form that would have set forth the doctor's opinion regarding Devora's ability to perform basic work activities, *see* R. 34 (citing to "Exhibit 8–F, Medical assessment of ability to do work related activities, physical," and noting that such form was "not going to be admitted as evidence because the form was not filled out by the doctor."). The ALJ deemed this form "very important" to his determination. R. 29. The ALJ, however, did not fully explain to Devora the significance of this form.

The above-quoted colloquies by the ALJ would reasonably have led Devora to believe that (1) she was likely to obtain benefits, R. 30, 33; and (2) all that was being required of her was to "do the best [she] can," R. 33, to get the doctor to fill out the form that was being proferred to her (and

that she may not have been able to read). The ALJ did not ask her to personally ensure that the form was filled out or to arrange for the form's transmission back to the ALJ. Instead, the ALJ suggested that she "have the doctor fill that out and send that back to us," R. 29, and that she shouldn't "worry about it." R.33. Given the fact that the ALJ had stated that there was a "good chance," R. 29, her claim would succeed and that she "probably," R. 33, would get benefits once the form was returned by the doctor, Devora understandably might have thought that she would be alerted to any failure on the doctor's part to return the form and that her claim would not be denied simply because the doctor failed to fill out the form as contemplated.

■ There is ample case law suggesting that an ALJ has an independent duty to make reasonable efforts to obtain a report prepared by a claimant's treating physician in order to afford the claimant a full and fair hearing. *See, e.g., Peed v. Sullivan,* 778 F.Supp. 1241, 1246 (E.D.N.Y.1991) ("[W]hen the claimant appears pro se, the combined force of the treating physician rule and of the duty to conduct a searching review requires that the ALJ make every reasonable effort to obtain not merely the medical records of the treating physician but also a report that sets forth the opinion of that treating physician as to the existence, the nature and the severity of the claimed disability."); *see also Jones v. Apfel,* 66 F.Supp.2d 518, 524 (S.D.N.Y.1999) (ALJ failed to fulfill duty to develop the administrative record where the record lacked any report from the claimant's treating physician); *Geracitano v. Callahan,* 979 F.Supp. 952, 956 (W.D.N.Y.1997) ("A corollary ... to the treating physician rule [is] that the decision maker [has] a duty to seek clarification from a treating physician in the

event the physicians's report [is] somehow incomplete.") (citing *Schisler v. Bowen*, 851 F.2d 43, 46–47 (2d Cir.1988)); *cf., Santiago v. Apfel*, 2000 WL 488467, at *6 (S.D.N.Y. Apr.25, 2000) (ALJ fulfilled his duty to develop administrative record where ALJ obtained all relevant medical and treatment records, elicited detailed testimony from claimant and claimant's daughter, and obtained a "Medical Assessment of Ability to Do Work Related Activities" form from the claimant's treating physician). The applicability of this legal principle is not in dispute here because the ALJ in fact recognized the importance of such a report in Devora's case. The problem is that the ALJ did not take "reasonable" steps to investigate the failure to procure this form—a failure that cannot be excused given his colloquy with Devora that may have misled her into believing that any failure to return this form was something she need not "worry" about. R. 33.

The ALJ might have been able to discharge his obligations if he had clearly "direct[ed][the] *pro se* claimant to obtain a more detailed statement from the treating physician." *Cruz v. Sullivan*, 912 F.2d at 12. In this case, however, that direction was couched in terms that did not alert Devora to how critical this task was and that actually suggested she need not concern herself with getting the form completed and returned once she had given it to the doctor. By telling Devora that she should not "worry about" getting the form filled out and returned and to "just do the best you can," R. 33, Devora could not possibly have understood the importance of the form to fulfilling the ALJ's prediction that she would "probably" get a favorable determination on her benefits. Because of these statements, and the natural conclusion Devora would have drawn from them, the ALJ did not fulfill his duty to develop a complete record. *Tejada*, 167 F.3d at 774. In other words, the ALJ did

not make "every reasonable effort" to help Devora get the necessary medical report from her treating physician under these circumstances. *Perez v. Chater*, 77 F.3d at 47 (quoting 20 C.F.R. § 404.1512(d)). For this reason, therefore, the case must be remanded for a more complete development of the record.

### 2. *Obesity*

█ Because this case is being remanded for further development of the record, the Court also notes that the ALJ did not question Devora sufficiently regarding her obesity and its impact on her other ailments, daily activities and ability to work. On remand, specific inquiry should be made as to this issue. Although, as the Commissioner notes, Reply Mem. at 6, obesity has been deleted from the Listing of Impairments, 20 C.F.R., subpart P, appendix 1, obesity is still "consider[ed] ... to be a medically determinable impairment" and an ALJ must "consider its effects when evaluating disability." Social Security Ruling, Evaluation of Disability, 65 Fed.Reg. 31039, 31039 (May 15, 2000). "An [obese] individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing and pulling.... Obesity may also affect an individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time .... [Our] RFC assessments must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." *Id.* at 31041–31042. Based on this inquiry and any new medical record developed, the ALJ should also consider whether it is necessary to obtain a treating physician's opinion regarding the impact of Devora's

**176**

obesity on her ability to engage in basic work activities. *See also Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir.1991) ("[T]he combined effect of a claimant's impairments must be considered in determining disability [and] the S.S.A. must evaluate their combined impact on a claimant's ability to work, regardless of whether every impairment is severe."); Evaluation of Obesity, 65 Fed.Reg. 31039 at 31042 ("For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone").

*Conclusion*

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is denied and the action is remanded to the Commissioner for further development of the record consistent with this opinion. *See Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir.1999).

Specifically, the ALJ shall inform Devora of the critical need for obtaining a report from her treating physician, shall afford her a fair opportunity to obtain such a report and shall, if necessary, make reasonable efforts to assist her in this process. In addition, the ALJ shall consider the impact of Devora's obesity on her claim for benefits and shall consider whether it is appropriate to obtain a medical report that specifically addresses this condition,

SO ORDERED.