**Maria Dahlia C. LIM, Plaintiff,**

v.

**Carolyn W. COLVIN, Acting Commissioner of Social Security, Defendant.**

**15–CV–1680 (WFK)**

United States District Court, E.D. New York.

Signed March 20, 2017

Filed 03/22/2017

Maria Dahlia C. Lim, Jamaica, NY, pro se.

Social Security Administration–Generic, Social Security Administration, Matthew Silverman, United States Attorney's Office, Brooklyn, NY, for Defendant.

## DECISION AND ORDER

HON. WILLIAM F. KUNTZ, II,
UNITED STATES DISTRICT JUDGE

Plaintiff Maria Dahlia C. Lim ("Plaintiff"), appearing *pro se*, brings this action under 42 U.S.C. § 405(g) and seeks review of the Commissioner of the Social Security Administration's (the "Commissioner" or "Defendant") August 28, 2014 denial of her application for Social Security Disability ("SSD") benefits. Compl. ¶¶ 1, 4, ECF No. 2. The Commissioner filed a motion for judgment on the pleadings on March 11,

2016, ECF No. 20, contending the Administrative Law Judge ("ALJ") correctly applied the relevant legal standards and her decision is supported by substantial evidence. Def.'s Mem. Law. Supp. Mot. J. Pleadings ("Def.'s Mot.") at 1, ECF No. 21. In her reply, Plaintiff argues the ALJ's decision did not adequately account for certain medical evidence in the record in determining she had the residual functional capacity ("RFC") to perform light work and that the ALJ failed to properly develop the record, so Plaintiff should be granted SSD benefits. *See* Pl.'s Affirmation Opp. Def.'s Mot. ("Pl.'s Opp."), ECF No. 19. For the reasons set forth below, Defendant's motion is DENIED and this action is remanded for further proceedings consistent with this decision.

## BACKGROUND

Plaintiff was born on November 23, 1963, in the Philippines. Administrative Transcript ("Tr.") at 7, ECF No. 23. She immigrated to the United States in March 1989 and became a U.S. citizen in or around 1997. *Id.* at 7–8. Plaintiff had trained as a nurse in the Philippines and, after moving to the United States, she continued in that profession, working in Massachusetts and, later on, in New York. *Id.* at 7–8. Plaintiff worked as a nurse continually between 1987 and 2010, when she found she could no longer work due to pain in her legs and lower back. *Id.* at 13–17. Plaintiff has an extensive medical history, including diagnoses of severe asthma and allergies, *id.* at 388–400, irritable bowel syndrome, *id.* at 338–40, and carpal tunnel syndrome, *id.* at 480, as well as her allegedly disabling conditions, fibromyalgia,[1] neuritis,[2] and back pain, *id.* at 135–41,

---

1. "[A] chronic disorder characterized by widespread pain, tenderness, and stiffness of muscles and associated connective tissue structures that is typically accompanied by fatigue, headache, and sleep disturbances." Fibromyalgia, Merriam–Webster Dictionary (2017), https://www.merriam-webster.com/dictionary/fibromyalgia.

2. "[A]n inflammatory or degenerative lesion of a nerve marked especially by pain, sensory disturbances, and impaired or lost reflexes."

218.[3]

Plaintiff applied for SSD on January 11, 2012, for a period of disability allegedly beginning on December 12, 2010. *Id.* at 117. After her initial application was denied on June 20, 2012, Plaintiff requested a hearing with an ALJ. *Id.* The ALJ, Marilyn P. Hoppenfeld, held a hearing on August 15, 2013, at which Plaintiff was represented by an attorney and testified on her own behalf. *Id.* at 1–97 (transcript of hearing). A medical expert, Dr. Levine (an orthopedic surgeon), and a vocational expert testified at the hearing as well. *Id.* at 61–78, 81–95. ALJ Hoppenfeld found Plaintiff did not have a disability within the meaning of the Social Security Act (the "Act") between January 11, 2012, and August 28, 2014, the date of the decision. *Id.* at 129. Plaintiff appealed the ALJ's decision to the Notice of Appeals Council, which declined to review the case on January 15, 2015. *Id.* at 98–100. This denial became the Commissioner's final act.

## DISCUSSION

### I. Standard of Review

■■■ When a claimant challenges the Social Security Administration's denial of disability benefits, the Court's function is not to evaluate *de novo* whether the claimant is disabled, but rather to determine "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart,* 388 F.3d 377, 384 (2d Cir. 2004), *amended on reh'g,* 416 F.3d 101 (2d Cir. 2005); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive [.]"); *Moran v.*

*Astrue,* 569 F.3d 108, 112 (2d Cir. 2009) (applying a "substantial evidence" standard of review). Substantial evidence is "more than a mere scintilla"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consol. Edison Co. of N.Y., Inc. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). The substantial evidence test applies not only to the Commissioner's factual findings, but also to inferences and conclusions of law drawn from those facts. *See Carballo ex rel. Cortes v. Apfel,* 34 F.Supp.2d 208, 214 (S.D.N.Y. 1999) (Sweet, J.). In determining whether the record contains substantial evidence to support a denial of benefits, the reviewing court must examine the entire record, weighing the evidence on both sides to ensure the claim "has been fairly evaluated." *See Brown v. Apfel,* 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Grey v. Heckler,* 721 F.2d 41, 46 (2d Cir. 1983)).

■■■ It is the function of the SSA, not the federal district court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir. 1983) (citing *Richardson,* 402 U.S. at 399, 91 S.Ct. 1420); *see also Clark v. Comm'r of Soc. Sec.,* 143 F.3d 115, 118 (2d Cir. 1998) ("[I]t is up to the agency, and not th[e] court, to weigh the conflicting evidence in the record[.]"). Although the ALJ need not resolve every conflict in the record, "the crucial factors in any determination must be set forth with sufficient specificity to enable [the reviewing court] to decide

Neuritis, Merriam–Webster Dictionary (2017), https://www.merriam-webster.com/dictionary/neuritis.

**3.** Her conditions were alternatively listed as fibromyalgia, degenerative disc disease, and

asthma in a "Physical Residual Functional Capacity Assessment" that appears to have been completed by an employee of the SSA. Tr. at 136.

whether the determination is supported by substantial evidence." *Calzada v. Asture,* 753 F.Supp.2d 250, 268–69 (S.D.N.Y. 2010) (Sullivan, J.) (internal quotation marks omitted) (citing *Ferraris v. Heckler,* 728 F.2d 582, 587 (2d Cir. 1984)).

▮▮▮▮ To fulfill this burden, the ALJ must "adequately explain his reasoning in making the findings on which his ultimate decision rests" and must "address all pertinent evidence." *Kane v. Astrue,* 942 F.Supp.2d 301, 305 (E.D.N.Y. 2013) (Kuntz, J.) (quoting *Calzada,* 753 F.Supp.2d at 269). "[A]n ALJ's failure to acknowledge relevant evidence or to explain its implicit rejection is plain error." *Id* (internal quotation marks and citations omitted). Remand is warranted when "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan,* 168 F.3d 72, 82–83 (2d Cir. 1999).

## II. Analysis

### A. Applicable Law

For the purpose of disability benefits, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The impairment in question must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner must apply the five-step sequential process set forth in 20 C.F.R. § 404.1520. *See, e.g., Rosa,* 168 F.3d at 77 (laying out the five-step process for evaluating disability claims). The claimant bears the burden of proving the first four steps, while the burden shifts to the Commissioner at the fifth step. *Id.* First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not so engaged, the second step is to determine whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant has such an impairment, the third step is to determine whether the impairment or combination of impairments meets or equals one of the listings in Appendix 1 of the regulations. *Id.* § 404.1520(a)(4)(iii). If the claimant's impairment does not match any of the listings, the fourth step is to determine whether the claimant's residual functional capacity ("RFC") allows the claimant to perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform past relevant work, the final step is to determine whether the claimant can perform another job based on his or her RFC, work experience, age, and education. *Id.* § 404.1520(a)(4)(v).

### B. The ALJ's Decision

The ALJ followed the five-step procedure in evaluating Plaintiff's claim and found the following: (1) Plaintiff had not engaged in gainful activity since December 12, 2010, the alleged onset date of her disabling conditions;[4] (2) Plaintiff had four severe impairments—back disorder, chronic pain syndrome, status-post carpal tunnel release bilaterally, and obesity—that impaired her ability to work; (3) Plaintiff's impairments, alone or in combination, did not equal the severity of the eligible impairments listed in 20 C.F.R. Part 404,

---

4. The ALJ found Plaintiff had $12,135.74 of earnings in 2012 that had not been explained

but found the issue to be "moot" because Plaintiff's claim was being denied. *Id.* at 119.

Subpart P, Appendix 1; (4) Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b),[5] with some additional limitations on her ability to lift, sit, stand, and walk; (5) Plaintiff was unable to perform any past relevant work; (6) at the time of the alleged onset date of her condition, Plaintiff was a "younger individual" (although she is now "closely approaching advanced age") and had transferable work skills, so could reasonably be expected to perform other occupations that "exist[ ] in significant numbers in the national economy." Tr. at 117–29.

With regard to the third factor, the ALJ did not indicate which listing(s) she had evaluated Plaintiff's conditions for but noted she had relied on the medical expert, Dr. Levine, an orthopedic surgeon who never examined Plaintiff but who reviewed her medical records and heard her testimony at the hearing. Id. at 61. Dr. Levine "opined" Plaintiff did not have "an impairment or combination of impairments" that would satisfy this factor. Id. at 120. The ALJ further found the "medical evidence of record did not document signs, symptoms, and/or laboratory findings indicating" such an impairment and "[n]o treating, examining, or non-examining medical source" had made such a finding. Id.

The ALJ also relied heavily on Dr. Levine's testimony in determining Plaintiff's RFC at the fourth step. Dr. Levine, who specifically indicated he could only speak to Plaintiff's "musculoskeletal system," found that Plaintiff had "a medically determinable impairment of chronic low back pain, secondary to lumbosacral degenerative disc disease" (i.e., arthritis of the spine), and numerous "bulging or protruding discs" in her spine, but that these conditions did not meet or equal a listing. Id. at 65–66, 71. Dr. Levine explained that, with regard to Plaintiff's back pain, the MRI evidence showed no "neurologic compression" and that there was "frequent reference to [Plaintiff] having normal strength, normal sensation, and normal gait" in her medical records, which "suggeste[d] an absence of any type of nerve root or spinal cord compromise." Id. at 71. Accordingly, his opinion, "orthopedically and objectively," was that Plaintiff had the RFC necessary to, inter alia, sit six hours in an eight-hour work day with customary breaks, stand or walk for four hours in an eight-hour work day with customary breaks, and occasionally lift 20 pounds. Id. at 72.

In forming this opinion, Dr. Levine acknowledged Plaintiff's medical "records are replete with pain complaints pretty much over [Plaintiff's] entire body" and found that a "diagnosis of chronic pain syndrome probably would be appropriate," although one of Plaintiff's treating physicians, Dr. Annello, had indicated a diagnosis of fibromyalgia. Id. at 67–68. He also acknowledged that "[p]ain is a subjective phenomenon" and that he could not, based on the record, find that Plaintiff was not experiencing the pain she claimed. Id. at 78. Specifically, Dr. Levine explained that Plaintiff's physical examinations were "pretty normal" and so there was "minimal

---

5. "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

evidence to support the subjective complaints of pain," but that "does not, in any way, [mean] that she does not feel pain." *Id.*

The ALJ adopted Dr. Levine's reasoning regarding Plaintiff's RFC, finding it was "consistent with the objective medical evidence," *id.* at 120, despite Plaintiff's own testimony as to her limitations, *id.* at 121–22, and her treating physicians' determinations that she suffered from fibromyalgia, *id.* at 125–26. In reliance upon the vocational expert's testimony, the ALJ found there were a number of jobs Plaintiff could still perform with her RFC, including General Clerk, Hotel Desk Clerk, File Clerk, and, if Plaintiff were limited to "simple, routine, repetitive, limited decision making jobs," Ticket Taker/Usher. *Id.* at 123–24.

### C. The ALJ Applied the Incorrect Legal Standard to Plaintiff's Claims

The ALJ applied the wrong legal standard when she determined Plaintiff's "medically determinable impairments could not reasonably be expected to cause the alleged symptoms." *Id.* at 127. This was based, in part, on a misreading of the record and overreliance on Dr. Levine's testimony. Specifically, the ALJ analyzed Plaintiff's claims under a legal standard appropriate for musculoskeletal pain, which Dr. Levine was able to testify to, rather than for fibromyalgia, which was Plaintiff's chief complaint in her application for disability, *id.* at 218, and which is the predominant diagnosis of her treating physicians, *see, e.g., id.* at 493–98, 547–50, 555, 572–82 (notes from Dr. Annello and Dr. Ragone noting Plaintiff's fibromyalgia diagnosis). When the correct legal standard is applied, the ALJ's decision is not supported by substantial evidence.

### a. The ALJ Did Not Adhere to the Treating Physician Rule

In evaluating the available medical evidence as part of an application for disability benefits, "[t]he law gives special evidentiary weight to the opinion of the treating physician[s]." *Clark*, 143 F.3d at 118. Specifically, the regulations state:

> Generally, [the SSA] give[s] more weight to opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). For these reasons, the opinion of a treating physician must be given controlling weight on the issue of the nature and severity of a claimant's impairments, so long as the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record." *Id.* If the ALJ does not give a treating physician's opinion controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with other substantial evidence in the case record, then the ALJ must assess six factors to determine how much weight to afford the treating medical opinion and other medical opinions. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). These factors are: (1) whether the physician examined the claimant; (2) the nature and extent of the treatment relationship, including the length of the relationship and the frequency of examination; (3) the evidence in support of each

opinion, such as medical signs, laboratory findings, and more complete explanations; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the medical provider is a specialist; and (6) any other relevant factors. *Id.* §§ 404.1527(c), 416.927(c). Remand is appropriate "when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion" or when opinions from the ALJ "do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

▮ In her decision, the ALJ chose to credit the opinion of Dr. Levine, who had never examined Plaintiff, over the opinions of her treating physicians, particularly Dr. Annello and Dr. Ragone, pain management specialists who had been treating Plaintiff for fibromyalgia for many years. Tr. at 127. As noted, Plaintiff's medical records are replete with references to both her chronic pain symptoms and her history of fibromyalgia. *See, e.g., id.* at 493–98, 547–50, 555, 572–82. Further, Plaintiff was being treated with a number of medications, including Nucynta and Cymbalta, which are specifically used to treat fibromyalgia, *see, e.g., id.* at 582 (January 30, 2012 note of Dr. Annello describing regimen of Cymbalta, Savella, and Nucynta to treat Plaintiff's fibromyalgia), and her physicians frequently noted that Plaintiff had 11 or greater of 18 tender points on her body, *see, e.g., id.* at 402, 404–06, 408, 412, 493, 577, which is a clinical sign that supports a fibromyalgia diagnosis, *Green–Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003) (citing SSA Memorandum, *Fibromyalgia, Chronic Fatigue Syndrome, and Objective Medical Evidence Require-*

*ments for Disability Adjudication*, at 5 (May 11, 1998)). Although the ALJ acknowledged the reports of Dr. Annello and Dr. Ragone, she apparently discounted them because their treatment narratives did not consistently include references to Plaintiff having at least 11 of 18 tender points. *See* Tr. at 125. To further account for why she discounted the opinions of Dr. Annello and Dr. Ragone, who had treated Plaintiff for fibromyalgia for a number of years, in favor of the opinion of Dr. Levine, who had never examined Plaintiff, the ALJ indicated "the opinion of the medical expert was given great weight because it was most consistent with the evidence of record that included objective evidence and physical examinations." *Id.* at 127. In light of Plaintiff's diagnosis with fibromyalgia, though, this was the incorrect legal standard to apply, and therefore the opinions of Plaintiff's treating physicians should have been given greater, if not controlling, weight.

### b. The ALJ Did Not Analyze Plaintiff's Claims Under the Correct Standard for Fibromyalgia Diagnoses

▮ In requiring "objective" evidence to support Plaintiff's subjective complaints of pain arising from fibromyalgia, the ALJ applied the incorrect legal standard in analyzing Plaintiff's condition. Specifically, the ALJ's analysis was appropriate for subjective complaints of pain as connected with musculoskeletal conditions, which Dr. Levine was able to speak to and which must generally be supported by "medical signs and laboratory findings which show that [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain." 20 C.F.R. § 404.1529(a); *see also* 42 U.S.C. § 423(d)(5)(A).[6] Even so,

---

6. "An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clin-

ical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities

"subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence," *Aubeuf v. Schweiker*, 649 F.2d 107, 111–12 (2d Cir. 1981) (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)), so long as the pain results from a "physical or mental impairment" as defined by section 223(d)(3) of the Act, 42 U.S.C. § 423(d)(3) (1976); *see also Gallagher v. Schweiker*, 697 F.2d 82, 84–85 (2d Cir. 1983).

One such physical impairment is fibromyalgia, *see Soc. Sec. Ruling, Titles II & XVI: Evaluation of Fibromyalgia*, SSR 12–2P (S.S.A. July 25, 2012), which is the primary condition Plaintiff complained of in applying for SSD benefits. The Second Circuit reviewed the standard applicable to a fibromyalgia diagnosis in *Green–Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003), and found the ALJ had erred by requiring " 'objective' evidence for a disease that eludes such measurement." In *Green–Younger*, the claimant had a history remarkably similar to that of the Plaintiff here: she suffered chronic pain that caused her difficulty in standing or sitting for prolonged periods, interfered with her sleep, and particularly affected her lower back and legs. *Id.* at 101. Her doctor had indicated her symptoms were "characteristic of fibromyalgia" as well as degenerative disc disease, chronic low back syndrome, peroneal neuropathy, and carpal tunnel syndrome, and, after many years of attempting treatments that did not alleviate her symptoms, the claimant and her physician determined she would be unable to return to work and the claimant applied for SSD benefits. *Id.* at 101–03. In denying the claimant's application, an ALJ found

there were "no objective medical findings" to support her subjective complaints of pain and discounted her treating physician's diagnosis of fibromyalgia because it was "inconsistent with other substantial evidence of record," including clinical and laboratory diagnostic tests that showed the claimant had, among other things, a full range of motion. *Id.* at 105. In overturning the ALJ's decision, the Second Circuit found the ALJ had "misapplied SSA regulations" by, *inter alia*, "requiring objective evidence beyond the clinical findings for a diagnosis of fibromyalgia under established medical guidelines." *Id.* at 106–07.

In so holding, the Second Circuit recognized fibromyalgia is a disease that "eludes" measurement with "objective" evidence, but rather is diagnosed when patients exhibit certain "clinical signs and symptoms" that may include "widespread pain in all four quadrants of the body and at least 11 of the 18 specified tender points on the body." *Id.* at 107 (citation omitted). With this understanding, the Second Circuit found the claimant's subjective complaints of pain were "bolster[ed]" by her doctor's diagnosis of fibromyalgia, determined it was clear she would be unable to perform gainful work, and remanded the action for calculation of benefits. *Id.* at 108–09. Following this decision, a number of district courts have overturned denials of disability claims based on fibromyalgia where the ALJ's determination turned on the lack of "objective" evidence in the record to support the claimant's subjective complaints of pain. *See Crysler v. Astrue*, 563 F.Supp.2d 418, 440–41 (N.D.N.Y. 2008) (Kahn, J.) (remanding denial of SSD benefits where ALJ determined claimant's fi-

which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence

of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability." 42 U.S.C. § 423(d)(5)(A).

bromyalgia was not disabling because it was not supported by objective medical findings); *Willoughby v. Comm'r of Soc. Sec'y,* 332 F.Supp.2d 542, 546–57 (W.D.N.Y. 2004) (Larimer, J.) (same); *Gang v. Barnhart,* 02–CV–3647, 2003 WL 22183423, at *5–6 (E.D.N.Y. Sept. 23, 2003) (Block, J.) (same). Applying the *Green–Younger* standard here, it is clear the ALJ erred by relying on Dr. Levine's testimony because it was "most consistent with the evidence of record that included objective and physical examinations rather than on the clinical evidence supporting Plaintiff's diagnosis of fibromyalgia and, therefore, Plaintiff's subjective complaints of pain.[7] Accordingly, this action will be remanded for further proceedings applying the proper legal standard.

#### c. The ALJ Failed to Adequately Develop the Record

■■■ Because this case will be remanded for further proceedings, this Court notes that the ALJ failed to develop the record with regard to Plaintiff's symptoms related to her mental capacities and impairments. "An ALJ has an affirmative duty to develop the administrative record in a disability benefits case." *Devora v. Barnhart,* 205 F.Supp.2d 164, 172 (S.D.N.Y. 2002) (Gorenstein, J.) (citing *Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir. 1999)). In this instance, the ALJ acknowledged Plaintiff was experiencing memory problems as a side effect of her medications, but she failed to inquire into their extent or impact on Plaintiff's functional capacities. *See* Tr. at 22–23, 54. The ALJ also declined to request a consultative mental examination, despite apparently believing Plaintiff may have had psychological issues, *see id.* at 95 (deciding not to order a psychiatric evaluation despite finding "[Plaintiff] has some emotional stuff"), and Plaintiff's attorney's request that such an examination be conducted regarding the possible side effects of Plaintiff's medications, *id.* at 303. This decision is curious in light of the ALJ's apparent skepticism regarding Plaintiff's mental health, as a fibromyalgia diagnosis primarily relies upon subjective reports of pain. Where, as here, Plaintiff's mental health symptoms and capacities are relevant to her RPC, the ALJ should have further developed the record on these issues. *Cf. Rudder v. Chater,* 94–CV–8431, 1997 WL 297009, at *6 (S.D.N.Y. June 4, 1997) (Keenan, J.) (finding ALJ failed to adequately develop record where he didn't inquire into impacts or intensity of neurological symptoms)

■■■ Given the ALJ's failure to develop the record as to the extent and severity of Plaintiff's mental symptoms, the hypotheticals she presented to the vocational expert did not fully account for Plaintiff's mental limitations, particularly the memory loss and "brain fog" caused by her pain medications, Tr. at 22–23, 54, 298, 303, which are a non-exertional limitation relevant to Plaintiff's capacity to return to work, *see* 20 C.F.R. § 416.969a(c) (defining nonexertional limitations to include "difficulty maintaining attention or concentrat-

---

7. Perhaps because she discounted Plaintiff's subjective complaints of pain, the ALJ also overstated the extent to which Plaintiff's testimony as to her "activities of daily living" supported an RFC of light work. *See* Tr. at 127. Plaintiff testified that she can only walk about five blocks without pain, *id.* at 43; she can only stand for half an hour without discomfort, *id.*; she can only sit for an hour without feeling "fidgety because of the pain," *id.* at 45; she requires the assistance of her cousin or her son to clean or do the laundry, *id.* at 51, 53; she only cooks simple foods, such as those that can be cooked using a toaster, because she cannot lift heavy items or stand for long periods of time, *id.* at 52, 57; and she often finds it difficult to dress herself due to pain and stiffness, *id.* at 63. These stated limitations should be considered on remand.

ing" and "difficulty understanding or remembering detailed instructions").[8] "If a claimant has nonexertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert" regarding those limitations. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)). "A nonexertional impairment 'significantly limit[s]' a claimant's range of work when it causes an 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Zabala*, 595 F.3d at 411 (quoting *Bapp*, 802 F.2d at 605–06). Accordingly, the ALJ is directed on remand to more fully develop the record regarding Plaintiff's mental impairments and whether they significantly limit the range of meaningful employment opportunities available to her.

## CONCLUSION

For the reasons stated herein, Defendant's motion for judgment on the pleadings, ECF No. 20, is DENIED. The Court hereby REMANDS this action to the Social Security Administration for further administrative proceedings consistent with this opinion. Given how long Plaintiff's application for SSD benefits has been under consideration, the Commissioner is requested to complete such proceedings and issue a final determination within 120 days of this Order. The Commissioner shall update this Court by letter, copied to Plaintiff, within 90 days as to the progress that has been made on Plaintiff's claim. The Clerk of Court is respectfully instructed to close this case, subject to it being reopened for the purpose of enforcing this Order or any other proceedings, as necessary.

**SO ORDERED.**

---

8. In this instance, the ALJ consulted the vocational expert about positions that Plaintiff could obtain if she was limited to "simple, routine, minimal decision making, repetitive work, [that is] known as low stress," for which the vocational expert suggested Plaintiff could be a ticket taker/usher, office help, or library helper. Tr. at 90–93. Without an adequate record of the extent of Plaintiff's mental limitations, though, this generic question may not actually represent a reasonable work scenario for Plaintiff, who also suffers from limitations on her ability to stand, sit, walk, and use her hands.