Carmen MEJIA, Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.

No. 02–CV–2437.

United States District Court, E.D. New York.

April 16, 2003.

Herbert S. Forsmith, New York, NY, for plaintiff.

Kathleen Anne Nardan, New York, NY, for defendant.

### OPINION AND ORDER

GERSHON, District Judge.

Plaintiff Carmen Mejia applied for Social Security disability insurance benefits on May 9, 2000. Her application was denied on September 15, 2000. Plaintiff promptly requested a hearing to appeal that denial. On July 26, 2001, plaintiff appeared, represented by counsel, before Administrative Law Judge Irving Fleigler ("ALJ"). By decision dated March 23, 2002, the ALJ denied plaintiff benefits based on a *de novo* review of the record. The parties agree that the ALJ's determination became the final decision of the Commissioner as of May 22, 2002. Pursuant to 42 U.S.C. § 405(g), plaintiff commenced this action on April 30, 2002. On December 2, 2002, defendant Commissioner of Social Security ("Commissioner") moved for judgment on the pleadings on the ground that the ALJ's determination that plaintiff was not disabled was supported by substantial evidence. On January 2, 2003, plaintiff submitted her opposition to the Commissioner's motion and moved for judgment on the pleadings and for a remand solely for an award of benefits.

■ Pursuant to 42 U.S.C. § 405(g) of the Social Security Act, the findings of the Commissioner as to any fact, "if supported by substantial evidence, shall be conclusive." Substantial evidence is such evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Where a court finds that substantial evidence exists to support the agency's determination, the decision will be upheld, even where contrary evidence exists. *DeChirico v. Callahan,* 134 F.3d 1177, 1182 (2d Cir.1998) (affirming agency determination where substantial evidence existed for both sides). This standard applies to findings of fact as well as to inferences and conclusions drawn from such facts. *D'Amato v. Apfel,* 2001 WL 776945, at *3 (S.D.N.Y.2001), 2001 U.S. Dist. LEXIS 9459, at *10, *aff'd* 42 Fed.Appx. 415 (2002).

■ A district court reviews *de novo* whether the correct legal standard is applied and whether or not the ALJ's decision was based on the application of that standard. *Tejada v. Apfel,* 167 F.3d 770, 773 (2d Cir.1999); *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987); *Townley v. Heckler,* 748 F.2d 109, 112 (2d Cir.1984). Therefore, where an error of law has been made that might affect the disposition of the case, a court cannot fulfill its duty by simply deferring to the factual findings of the ALJ.

■ In order to establish an entitlement to benefits under the Social Security Act, a claimant must establish that he or she has a disability as defined by 42 U.S.C. § 423. *Balsamo v. Chater,* 142 F.3d 75, 79 (2d Cir.1998). Thus a claimant must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will be determined eligible for disability benefits only if his or her physical or mental impairment or impairments are of such severity that

the claimant is not only unable to perform his or her previous work, but cannot, considering claimant's age, education, and work experience, engage in any other kind of substantial gainful work existing in the national economy, regardless of whether such work exists in the immediate area in which claimant lives, or whether a specific job vacancy exists for the claimant, or whether the claimant would be hired if he or she applied for work. 42 U.S.C. § 423(d)(2)(A). In making an eligibility determination, the ALJ must consider four sources of evidence: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Brown v. Apfel,* 174 F.3d 59, 62 (2d Cir.1999).

In evaluating an application for disability insurance, an ALJ must follow the five-step procedure for finding disability set forth in the agency regulations implementing the Social Security Act. 20 C.F.R. § 404.1520; *Diaz v. Shalala,* 59 F.3d 307, 311 n.2 (2d Cir.1995). First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If not, the ALJ must determine whether the claimant has a "severe impairment" that significantly limits his or her ability to engage in basic work activities. If the claimant does suffer from such an impairment, the ALJ must determine whether this impairment "meets or equals a listed impairment" as contained in Appendix 1 of the regulations. If this third criteria is satisfied, the claimant is presumed to be disabled. If, however, the third criteria is not met, a presumption of disability does not arise, and the ALJ must determine whether or not the claimant is able to perform his or her past relevant work. If this fourth criteria is satisfied, the fifth step requires the ALJ to determine wheth-er the claimant is capable of performing any other work.

In this case, the ALJ, after proceeding through each of the steps listed above, determined that plaintiff was not disabled. First, the ALJ found that plaintiff has not engaged in any substantial gainful activity since the alleged onset of her disability. This finding is not disputed by plaintiff. Second, the ALJ concluded that the evidence established that plaintiff suffered from several severe impairments, including "affective disorder and a history of pain in the lower extremities." Third, the ALJ found that "these impairments are severe within the meaning of the Regulations but are not severe enough to meet or medically equal one of the impairments listed in Appendix 1." Fourth, the ALJ found that plaintiff retains the physical residual capacity to perform her past relevant work.

Plaintiff objects to the ALJ's findings on the grounds that: (a) the ALJ failed to make findings of fact in relation to plaintiff's functional capacity; (b) the ALJ failed to fairly evaluate and develop the evidence supporting plaintiff's claims; and (c) the ALJ failed to provide an adequate basis for his rejection of plaintiff's allegations of limited capacity.

Plaintiff in this case alleges disability beginning on August 9, 1998 from depression and left knee, right ankle, and left arm pain. Plaintiff, who is 60 years old and a native of the Dominican Republic, was formerly employed as a sewing machine operator. Her employment history includes two years as a home health care attendant, three years as a piece worker in a garment factory, and almost fourteen years as a finisher in a garment factory. Plaintiff's last date of employment was on or about January 31, 1998, when she was laid off for non-performance based reasons.

### 1. Plaintiff's Physical Capacity

█ The ALJ in this case found that plaintiff did not suffer from an objective medical condition that could reasonably be expected to produce disabling pain. This determination is supported by substantial evidence. No reports by treating physicians indicate that plaintiff was at any point unable to engage in work for the period necessary to establish disability. Five reports by examining physicians, including four from treating physicians, suggest that plaintiff did not suffer from any objective physical impairment at all. In addition, at least two examining physicians found plaintiff's physical complaints to be greater than the objective medical findings. The ALJ properly considered evidence in the record that plaintiff's pain was adequately controlled by medication. He also properly considered evidence of plaintiff's ability to engage in daily activities such as twice daily preparing her own meals, regular church attendance, and independent travel to and from medical appointments by public transportation. Since substantial evidence in the record, including reports by plaintiff's treating physicians, supports the ALJ's determination that plaintiff is not disabled, that determination is affirmed in relation to plaintiff's physical capabilities.

### 2. Plaintiff's Mental Capacity

While the record in this case does contain substantial evidence in support of the ALJ's findings regarding plaintiff's claimed physical impairments, the opposite conclusion must be reached in relation to plaintiff's claimed mental impairments.

In August 2000, plaintiff was seen by a consulting psychiatrist, Dr. Margaret Chu, for evaluation for depression. Plaintiff complained to Dr. Chu of poor sleep, loneliness, depression, and nightmares. She denied any delusions, paranoia, auditory or visual hallucinations or suicidal ideation. Dr. Chu diagnosed plaintiff with adjustment disorder with mixed features and moderate anxiety and depression. While Dr. Chu found that plaintiff suffered some limitations in her ability to sustain concentration, socially interact, and adapt as a result of her anxiety and depression, she found no significant limitations in plaintiff's understanding or memory, judgment or reality orientation. On September 13, 2000, a consulting psychologist reviewed plaintiff's medical record and Dr. Chu's report and found that plaintiff suffered from moderate limitations in her ability to understand, remember, and carry out detailed instructions. He did not find any other significant limitations on plaintiff's ability to engage in work.

On September 19, 2000, plaintiff reported to emergency room staff at Methodist Hospital that she was thinking of jumping from a building. Plaintiff left the emergency room against medical advice following her initial interview with hospital personnel. On November 6, 2000, however, plaintiff attended an intake interview at Park Slope Center for Mental Health. Plaintiff complained of anxiety, palpitations, panic attacks, decreased appetite, irritability, suicidal ideation, and social isolation. She was thereafter diagnosed with anxiety disorder and panic attacks. An initial treatment plan completed on November 6, 2000, indicated that plaintiff required one year of treatment and set, as a discharge goal, "reduction of symptom severity." On November 9, 2000, Dr. Kleinplatz, a treating psychiatrist at Park Slope Center for Mental Health, diagnosed plaintiff with an Axis II personality disorder, noting that plaintiff suffered from suicidal ideation. Plaintiff was prescribed three medications to treat her anxiety and depression: Buspar, an anti-anxiety medication, Paxil, an anti-depressant, and Rem-

eron, an anti-depressant commonly used to treat sleep disorders. Plaintiff's Global Assessment of Functionality score at that appointment was 65, indicating "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed.1994). Dr. Kleinplatz noted that plaintiff was unable to work because of her reported physical limitations.

Thereafter, plaintiff attended weekly therapy sessions at Park Slope Center for Mental Health where, as the ALJ noted, her therapist, Ms. Flores, twice noted concerns about plaintiff's commitment to treatment and compliance with her medication regimen. On January 8, 2001, Ms. Flores submitted a "Medical Source Statement" on plaintiff's behalf indicating that plaintiff suffered from "marked" impairment in five categories of ability to understand, remember, and carry out instructions and "marked" impairment in five categories of ability to respond appropriately to supervision, co-workers, and work pressures. In addition, Ms. Flores noted that plaintiff suffered from "visual and auditory hallucinations" and "intrusive thoughts" related to depression.

It is not clear from the record whether plaintiff continued treatment for depression and anxiety between January and May 2001. As of May 15, 2001, however, plaintiff began attending bi-weekly treatment with a therapist at Park Slope Center for Mental Health. On July 23, 2001, Dr. Kleinplatz noted that plaintiff was poorly groomed, displayed bizarre mannerisms, and presented slow, illogical speech patterns. He also noted that plaintiff displayed memory loss, poor insight and limitations on daily functioning due to despair, suicidal ideation, insomnia, fatigue, pain,

psychotic delusions and inability to concentrate. Dr. Kleinplatz thereafter concluded that plaintiff was unable to work.

■ The ALJ, in reaching his determination that plaintiff's mental state did not qualify as a disability made five findings. First, he found that plaintiff's treating psychiatrist's reports should be accorded "little weight" because they contained conflicting statements regarding the nature and origin of plaintiff's physical impairments. Second, he found that the Medical Source Statement of plaintiff's treating therapist, Ms. Flores, "merits little consideration since a psychotherapist is not an acceptable medical source." Third, the ALJ found that plaintiff's ability to watch TV, play solitaire, go to church, and engage in basic household and self-care with the assistance of her family "are inconsistent with a disabling mental impairment." Fourth, the ALJ opined that deterioration in plaintiff's mental state over the course of treatment impugned the credibility of the psychotherapist's findings. Finally, the ALJ found that, as of February 6, 2001, plaintiff experienced "a reduction of symptom severity." These findings are either unsupported by the record or based on legal error.

As a preliminary matter, the ALJ erred in the weight he accorded the various reports from plaintiff's treatment providers. As the only treating physician's reports assessing plaintiff's mental capacity, Dr. Kleinplatz's reports of November 9, 2000 and July 23, 2001 should have been accorded controlling weight. *See* 20 C.F.R. § 404.1527. The discrepancies noted by the ALJ between the two reports were minor in nature and did not relate at all to Dr. Kleinplatz's examination of plaintiff's mental state. Contrary to the ALJ's findings, Dr. Chu's report of August 2000 does not constitute substantial evidence inconsistent with Dr. Kleinplatz's findings. Dr. Chu's

report was issued four months prior to Dr. Kleinplatz's first examination of plaintiff. Since no consulting physician examined plaintiff at any point after September 2000, there is no basis for finding substantial evidence inconsistent with either of Dr. Kleinplatz's reports. Nor does this court find any basis for the argument, advanced by the Commissioner at the March 27, 2003 hearing, that Dr. Kleinplatz's report of July 23, 2001 should be discounted because it was not based on a full examination of plaintiff. Although plaintiff testified that she did not see Dr. Kleinplatz on the date the report was issued, the record clearly supports plaintiff's testimony that she saw Dr. Kleinplatz on a monthly basis as part of her regular treatment. Moreover, even if the ALJ had adequate grounds for according less than controlling weight to Dr. Kleinplatz's reports, he was still required to apply the factors specified in the regulations to determine the degree of weight to be applied to the treating physician's reports. The ALJ's failure to do so is alone ground for remand. *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir.1998); *Morillo v. Apfel*, 150 F.Supp.2d 540, 547 (S.D.N.Y.2001).

■ The ALJ also failed to give sufficient weight to the Medical Source Statement completed by plaintiff's psychotherapist, Ms. Flores, on January 8, 2001. Although a psychotherapist's report is not an "acceptable medical source" under 20 C.F.R. § 404.1513(a), as the report of a primary treatment provider, Ms. Flores' report should have been accorded more than "little" weight as "an other medical source" pursuant to 20 C.F.R. § 404.1513(d)(1). *See Bono v. Massanari*, 2001 WL 1104688, at *4 (E.D.N.Y.2001) 2001 U.S. Dist. LEXIS 14617, at *12 (applying "due consideration" to treating therapist's opinion). The record indicates that the ALJ did accord Ms. Flores'

progress notes more than "little" weight insofar as he relied upon them to establish that plaintiff was "unmotivated for treatment." As a treatment provider who saw plaintiff on a regular basis and who offered a diagnosis consistent with that of the treating psychiatrist, Ms. Flores' report relating the severity of plaintiff's mental illness and degree of impairment should have been accorded at least equivalent weight.

■ The ALJ's findings that plaintiff's description of her daily activities preclude a finding of a disabling mental condition and that her de-compensation during the course of treatment impugn her and her treatment providers' credibility are not substantiated by the evidence in this case. The ALJ's finding that plaintiff's participation in solitary activities within the confines of her home and engagement in limited social activities with the assistance of her family is "inconsistent with a disabling impairment" is not supported by medical opinion. The ALJ's finding of deterioration in plaintiff's reported emotional state over the course of treatment is an insufficient basis, given the entire record, to reject the credibility of plaintiff or the diagnostic capabilities of the professionals offering treatment.

■ Finally, as acknowledged by the Commissioner at the March 27, 2003 hearing, the ALJ made a fundamental error in finding that plaintiff experienced a "reduction of symptom severity" as of February 6, 2001. The quoted language is listed as a *goal* to be reached in order to satisfy "discharge criteria" in plaintiff's case, not as something that has occurred. Indeed, the record reflects deterioration, not improvement, in plaintiff's condition. Between November 6, 2000, the date of the initial treatment plan, and July 23, 2001, the date of Dr. Kleinplatz's second report, plaintiff's noted behaviors were increasing-

ly bizarre; auditory hallucinations and disordered speech were in evidence; and plaintiff's basic grooming had deteriorated.

Since the ALJ's decision employed the incorrect legal standards and was not supported by substantial evidence, the motion of the Commissioner is denied. Plaintiff's motion is granted to the extent that the case is remanded for re-evaluation in light of this opinion. Mr. Forsmyth has graciously agreed to continue to represent plaintiff in the remanded proceeding.

**SO ORDERED.**