Maria **MORILLO**, Plaintiff,

v.

Kenneth **APFEL**, Commissioner of Social Security, Defendant.

No. 99 CIV. 0272(VM).

United States District Court, S.D. New York.

June 21, 2001.

Charles E. Binder, Binder and Binder, New York City, for Plaintiff.

Lorraine S. Novinski, U.S. Atty., New York City, for Defendant.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Maria Morillo ("Morillo") brings this action under §§ 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3), to review a final determination of the Commissioner of Social Security (the "Commissioner") denying her application for disability benefits. For the reasons set forth below, the case is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

## BACKGROUND

### A. Procedural History

Morillo filed for disability insurance benefits on August 22, 1995. Tr. at 95–98 and 127–29.[1] In her application, Morillo described her disabling conditions as hypertension, allergies, degenerative joint disease, anemia, and thyroid problems. Tr. at 149. Her application was denied on October 20, 1995, and her request for reconsideration on April 10, 1996. Tr. at 139 and 144. Morillo requested an administrative hearing, which was heard by Administrative Law Judge ("ALJ") Kenneth Levin on April 9, 1997. Tr. at 34–37, 148.

On April 29, 1997 the ALJ issued his decision denying Morillo's application for disability insurance benefits. Tr. at 15–30. The ALJ found that Morillo retained residual functional capacity to perform sedentary work.[2] Tr. at 29. The Appeals Council denied Morillo's request for review on November 20, 1998, and the decision of the ALJ thus became the final decision of the Commissioner. Tr. at 3–4.

On January 14, 1999, Morillo filed this complaint. On September 15, 2000, she moved pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings, seeking reversal of the Commissioner's decision, or, in the alternative, a remand to the Commissioner for a new hearing. On November 17, 2000, the Commissioner cross-moved for affirmance of the ALJ's decision and dismissal of the complaint.

### B. Morillo's Personal History

Morillo is a forty-eight year-old woman who was born in the Dominican Republic and immigrated to the United States in 1979. Tr. at 47. She is educated through the 10th grade of high school and her native language is Spanish. *Id.* She understands "a little" English but is not able to hold a conversation in English. *Id.* On July 25, 1995, Morillo quit her job as a home attendant after having worked in this capacity for four years. Tr. at 48. Previously, she had worked for eleven years as a quality control inspector of sewed clothing. *Id.*

### C. Morillo's Medical History

In February 1995, Morillo underwent surgery, entailing tracheostomy, uvuloplasty, and septoplasty, to remove excessive growth of her soft palate and uvula, which was impairing her respiration. Tr. at 76 and 234. In her testimony before the ALJ, Morillo complained about difficulty breathing, asthma, poor circulation, leg swelling, sudden urges to fall asleep, and depression. Tr. at 50. Morillo further testified that she suffers from "middle, lower back pain" that "feels like the bones [are] rubbing against each other." Tr. at

---

1. "Tr." refers to the transcript of the administrative record filed by the Commissioner as part of his answer in accordance with § 205(g) of the Act, 42 U.S.C. § 405(g).

2. Sedentary work involves sitting, occasional walking and standing, and occasional lifting of articles weighing no more than ten pounds, such as docket files, ledgers, and small tools. *See* 20 C.F.R. § 404.1567(a)(2001).

51. She said that this pain compels her to alternate sitting and standing throughout the day because she cannot withstand either for longer than a half-hour at a time. Tr. at 72–73. When walking, Morillo said she experiences such severe pain that she must use a cane outdoors and pause at least four times in one block. Tr. at 50 and 62–63. Finally, Morillo stated that she takes medication for depression, sees a therapist, and cries "very often." Tr. at 65–66 and 68.

Morillo was treated by Dr. Jesus Hernandez between March 1994 and March 1996. Tr. at 328. Although Dr. Hernandez's notes are largely illegible, he appears to have treated Morillo primarily for difficulty breathing, asthma, hypertension, swelling of the legs, chronic allergies, and depression. Tr. at 58–68. Between July and September 1995, Dr. Hernandez wrote three notes for Morillo in which he stated that her medical conditions precluded her from working. Tr. at 220–22. Dr. Hernandez cited hypertension, sleep apnea, degenerative joint disease, chronic allergies, rhinitis, and anemia as the medical conditions responsible for Morillo's disability. *Id.* On March 13, 1997, Dr. Hernandez completed a form letter for Morillo's attorney in which he opined that she could not work due to her difficulty breathing and her constant fatigue. Tr. at 328.

Morillo also was treated at the Columbia–Presbyterian Medical Center for asthma, gastritis, stress incontinence, hoarseness, joint pain, back pain, and leg edema. Treatment notes date from January 1996 through January 1997. Tr. at 318–327.

Dr. Claude Laniado at the Metropolitan Center for Mental Health treated Morillo for depression. Tr. at 280. His treatment notes document poor self-esteem and strained family relationships. Tr. at 280–95. Dr. Laniado prescribed Prozac and Klonopin for Morillo. Tr. at 282–86.

In October 1996, Dr. Laniado evaluated Morillo's mental residual functional capacity. The assessment measured workplace skills such as understanding and memory, concentration and persistence, social interactions, and adaption. Tr. at 228–31. On eighteen of twenty categories, Dr. Laniado rated Morillo as "markedly impaired," the most severe of the available assessment categories. *Id.* In a cover note attached to the results of the assessment, Dr. Laniado states that "overall there is some improvement, but not enough to work at this time." Tr. at 228.

Morillo was examined by several Social Security Administration ("SSA") consultative physicians: Dr. Peter Graham, Dr. Fajardo, and Dr. Antonio De Leon.

Dr. Graham, an internal medicine specialist, evaluated her on September 8, 1995. Tr. at 166–69. Morillo described symptoms and past treatment with respect to hypertension, joint pain, asthma, anemia, and back pain. *Id.* Dr. Graham diagnosed her with poorly controlled hypertension, joint pains with no functional deficit, asthma, anemia, back pain with no functional deficit, and varicose veins. Tr. at 168. Dr. Graham concluded that Morillo was "stable" and "able to sit, stand, walk, lift, carry, handle objects, hear, speak and travel." Tr. at 169.

Dr. Fajardo, another internal medicine specialist, examined Morillo on October 30, 1995. Tr. at 189–91. Morillo described her ailments as headaches with decreased vision, intermittent chest pain, low back pain, peptic ulcer disease, depression, and asthma. Tr. at 189. Dr. Fajardo diagnosed her with poorly controlled hypertension that has caused end organ damage. He also determined that she suffered from low back pain with minimal functional deficit, anemia, depression, and peptic ulcer disease. Tr. at 191. Dr. Fajardo conclud-

ed that Morillo was moderately physically impaired. *Id.*

A third internal medicine specialist, Dr. Antonio De Leon, examined Morillo on March 27, 1996. Tr. at 198–200. With Dr. De Leon, Morillo discussed her asthma, allergies, urinary frequency, back pain, shortness of breath, and occasional headaches. *Id.* Dr. De Leon's impressions were obesity, hypertension, abnormal cardiogram, bronchial asthma, status post tracheostomy, back pain, and history of nervousness accompanied by depression. *Id.* He opined that Morillo was "mild [sic] to moderately limited" with respect to "walking, standing, carrying, lifting, pushing, [and] pulling." *Id.*

Morillo was also examined by two consulting psychiatrists, Dr. Luigi Marcuzzo and Dr. Alain DelaChapelle.

Dr. Marcuzzo diagnosed her with depression and opined that her "allegations are consistent with the findings in the interview." Tr. at 194–95. Dr. Marcuzzo found that Morillo could work in a low-stress job. *Id.*

To Dr. DelaChapelle, Morillo complained of "anxiety, depression, tearfulness, decreased sleep, and occasional visual hallucinations." Tr. at 196–97. Dr. DelaChapelle diagnosed Morillo with dysthymic disorder and opined that she "has a satisfactory ability to understand, remember and carry out instructions, and a satisfactory ability to respond appropriately to supervision, co-workers, and work pressures." Tr. at 197.

A non-examining medical expert, Dr. Plotz, testified at the behest of the SSA. Tr. at 75–88. He identified Morillo's medical conditions as mild osteoarthritis of the cervical spine, modest hypertension, mild cardiac enlargement, low back pain, asthma, allergy to dust, sleep apnea, obesity, history of depression, mild anemia, and hypertrophy of her soft palate and uvula. Tr. at 75–76. Dr. Plotz opined that "[Morillo's] significant medical findings, according to the record, are the depression for which she is getting psychotherapy and prozac, and this problem with the soft palate which has been remedied surgically." Tr. at 75–77. Dr. Plotz further testified that Morillo could perform sedentary work. Tr. at 79. He felt that she probably could not lift or carry more than ten pounds or walk or stand for more than two hours. *Id.*

Finally, a vocational expert, Lynn Jonas, was called to testify by the SSA. When questioned by the ALJ about the availability of quality control employment, the type of employment Morillo held prior to working as a home attendant, Jonas responded that there are 1,000 quality control inspector and checker jobs in New York, and 13,500 nationally. Tr. at 89. Jonas further testified that there are 4,200 jobs locally and 180,000 nationally that consist of simple, routine tasks, and that do not entail use of dangerous machinery, driving, and regular face-to-face public contact, all employment requirements that the ALJ felt Morillo should avoid. Tr. at 90.

Jonas testified in answer to Morillo's attorney that an uncontrollable desire to fall asleep would affect Morillo's ability to perform the jobs described by the ALJ. Tr. at 92–93. Furthermore, Jonas stated that a person who exhibited the mental residual functional capacity described in Dr. Laniado's assessment would "probably not" be able to perform any job in the national economy. Tr. at 93–94.

## DISCUSSION

### A. Legal Background

■ This court reviews the decision of the ALJ under the "substantial evidence" standard. *Richardson v. Perales,* 402 U.S.

389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Substantial evidence is more than a scintilla. *See id.* If the court finds that there is substantial evidence supporting the Commissioner's decision, that decision must be upheld, even if there also is substantial evidence for the plaintiff's position. *Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir.1984).

SSA regulations provide that a finding of disability will be made only if the applicant is

> unable to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. [The] impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. § 404.1527(a) (2001).

■ In assessing a claim of disability, the ALJ must consider the following factors: (1) objective medical facts and clinical findings; (2) diagnosis and medical opinions of examining physicians; (3) subjective evidence of pain and disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience. *See Mongeur v. Heckler,* 722 F.2d 1033, 1037 (2d Cir. 1983).

■ The ALJ assesses an applicant's claim according to a five-step process. *See* 20 C.F.R. § 404.1520 (2001). First, the ALJ asks whether the claimant is engaged in substantial gainful activity. If not, at step two, the ALJ determines whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to perform basic work activities. Third, if the ALJ finds a "severe impairment" that is listed in Appendix 1 of the SSA regulations, there is a presumption of disability. Next, if the "severe impairment" is not contained in Appendix 1, the ALJ determines whether the claimant has the residual functional capacity to perform past work. Finally, at step five, if the claimant is unable to perform past work, the ALJ ascertains whether there is other work that she is capable of performing. The burden lies with the claimant to prove the requirements of the first four steps, but shifts to the Commissioner at step five, assuming the claimant has satisfied her burden. *See Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996).

### B. Legal Standards for Weighing the Evidence

In her motion for judgment on the pleadings, Morillo alleges that the ALJ erroneously failed to assign controlling weight to the opinions of two of her physicians, Dr. Jesus Hernandez and Dr. Claude Laniado.

### 1. Treating Physician Rule

■ The "treating physician" rule requires the ALJ to accord more weight to the opinions of treating physicians if (1) the treating source's opinion on the issue of the nature and severity of [the plaintiff's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record. If the ALJ does not give controlling weight to a treating source's opinion, he must apply several factors to determine what degree of weight should be assigned to the opinion. These factors include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the degree

to which the medical source supported his opinion; (4) the degree of consistency between the opinion and the record as a whole; (5) whether the opinion is given by a specialist; and (6) other evidence which may be brought to the attention of the ALJ. *See* 20 C.F.R. § 404.1527 (2001).

### 2. The Treating Physician Rule Applied to Dr. Hernandez

■ The ALJ held that Dr. Hernandez's assertion that Morillo is disabled is "totally conclusory and of little or no evidentiary value." Tr. at 26. As noted above, Dr. Hernandez stated that Morillo was disabled in an August 1995 note given to her and a March 1997 form provided to her counsel. Tr. at 221 and 328. The ALJ seemed to imply, although he did not expressly state, that Dr. Hernandez's treatment opinion did not satisfy the first prong of the treating physician rule. The ALJ also found Dr. Hernandez's credibility lacking because in the form Dr. Hernandez provided to Morillo's counsel, he stated that she became "totally disabled" on February 5, 1995, but she did not stop working until July 1995. *Id.* In addition, the ALJ pointed out that Dr. Hernandez completed the form a year after he last examined Morillo. *Id.*

The ALJ also implied that Dr. Hernandez's treating opinion did not satisfy the second prong of the treating physician rule because the doctor's treatment notes and the medical impairments he listed in the August 1995 and March 1997 letters were inconsistent with an assertion of disability. Tr. at 26–27. Moreover, the ALJ suggested that Dr. Hernandez's characterization of Morillo as disabled contradicted other substantial evidence in the record. *Id.*

The ALJ further refused to credit the opinion of Dr. Hernandez on the grounds that the doctor's treating notes contained no mention of Morillo complaining about joint or back pain, or pain from leg edema, although these were two of the principal impairments from which she claimed to suffer. Tr. at 22. Finally, the ALJ held that Dr. Hernandez's diagnosis of Morillo as disabled is unconvincing because it was predicated upon "the more minor of her conditions," which the non-examining medical expert, Dr. Plotz, testified would not cause any limitations on her capacity to work "except for the need to avoid environmental irritants." Tr. at 27.

The ALJ failed to correctly apply the law in his determination of whether to accord controlling weight to Dr. Hernandez's treatment opinion. First, the ALJ did not have the luxury of terminating his inquiry with the findings that Dr. Hernandez's assertion of disability is "totally conclusory" and inconsistent with the impairments from which Morillo admittedly suffers. Even if the clinical findings were inadequate, the ALJ had a duty to seek additional information from the treating physician, *sua sponte*. *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir.1998). *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir.1996) ("[T]he ALJ generally has an affirmative obligation to develop the administrative record. This duty exists even when the claimant is represented by counsel"); *see also Clark v. Commissioner of Social Security*, 143 F.3d 115, 118 (2d Cir.1998) ("If asked, . . . the doctor might have been able to offer clinical findings in support of his conclusion . . . [and] failure to include this type of support for the findings . . . does not mean that such support does not exist.").

■ Second, even if the ALJ properly determined that Dr. Hernandez's treatment opinion did not merit controlling weight, he was still required to apply the six factors specified above to determine what degree of weight should be applied. *See Schaal*, 134 F.3d at 503. In *Schaal*,

the Second Circuit vacated an adverse judgment on a disability benefits claim, and remanded for further proceedings, because the ALJ failed to "provide plaintiff with 'good reasons' for the lack of weight attributed to her physician's opinion as required by SSA regulations," and therefore the court "was unsure exactly what legal standard the ALJ applied in weighing" the treating physician's opinion. *Schaal,* 134 F.3d at 505. The ALJ's failure here to fully apply the strictures of the treating physician rule compels a remand. As noted by the Second Circuit in *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir.1987), "where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."

### 3. The Treating Physician Rule Applied to Dr. Laniado

Morillo also asserts that the ALJ erroneously failed to accord controlling weight to the treatment opinion of her psychiatrist, Dr. Claude Laniado. The ALJ found that Dr. Laniado's opinion that Morillo is disabled and unable to work due to depression is contradicted by treatment notes that indicate improvement. Tr. at 27. Consequently, the ALJ appears to completely discount the mental residual functional capacity assessment administered to Morillo in October 1996, in which Dr. Laniado rated her as "markedly limited," the most severe rating, in eighteen out of twenty categories. Tr. at 228–31. The ALJ also seems to discount Dr. Laniado's

cover letter to the assessment in which he states, "overall there is some improvement, but not enough to work at this time." Tr. at 228.

■ Once again, the ALJ did not fulfill his responsibility to develop the administrative record. If questioned, Dr. Laniado might have been able to marshal the requisite medical support to explain the apparent discrepancy between his findings on the mental residual functional capacity assessment and the indications of improvement on the treatment notes.

The ALJ also failed to state why Dr. Laniado's opinion that Morillo is disabled does not merit controlling weight. In assessing Morillo's psychiatric health, the ALJ appears to find authoritative evidence demonstrating that Morillo has inexplicably missed several appointments with her therapist. Tr. at 23. It is unclear what bearing this information has upon the determination of whether the opinion of Morillo's treating psychiatrist should be assigned controlling weight, or some lesser degree of weight. Thus, while the ALJ may conclude that the opinion of Dr. Laniado does not merit controlling weight, he is still obligated to apply the six factors enumerated above to determine the appropriate weight that should be assigned.

Finally, throughout his written decision, the ALJ inserted his own observations of Morillo's physical capacities to buttress his decision.[3] SSA regulations state that all evidence will be considered in adjudicating a claim for disability benefits, including "observations by our employees and other persons." *See* 20 C.F.R. § 416.929(c)(3) (2001). The SSA has interpreted this regulation to mean that the ALJ "may also

---

**3.** For example, the ALJ commented that "it was interesting to note that at no time during this very long hearing (lasting some 1–1/2 hours) did claimant either fall asleep or even

look somnolent or other than fully alert;" and "she came to the hearing with a cane, though she was not leaning on it when she walked into or out of the hearing room." Tr. at 19.

consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." *See* SSR 96–7p. 61 Fed. Reg. 34,483, at 34,486 (1996). The Second Circuit has held that such observations are entitled to only "limited weight," but there is no *per se* legal error where the ALJ considers physical demeanor as one of several factors in evaluating credibility. *Carroll v. Secretary of Health and Human Servs.*, 705 F.2d 638, 643 (2d Cir.1983).

At one point in his decision, the ALJ remarked that "claimant in fact bec[a]me quite tearful when talking about this [depression] and one of her other conditions, though she soon recovered her composure." Tr. at 20. Although observations about "physical demeanor" are not proscribed, an ALJ should take care to avoid making determinations about a plaintiff's psychological capacities based on those observations.

### ORDER

For the reasons set forth herein, it is hereby

ORDERED that the plaintiff Maria Morillo's motion for judgment on the pleadings [9–1] is DENIED to the extent she seeks reversal of the Commissioner's decision, but GRANTED to the extent she seeks a remand to the Commissioner for a new hearing; and it is further

ORDERED that the defendant Commissioner's motion for judgment on the pleadings [12–1] is DENIED; and it is further

ORDERED that this case is remanded to the Commissioner of Social Security for further administrative proceedings consistent with this Decision and Order.

This remand is ordered pursuant to sentence four of 42 U.S.C. § 405(g). *See Nivar v. Apfel,* No. 98 Civ. 3390, 1999 WL 163397, *5 (S.D.N.Y. Mar. 23, 1999); *Gra-*

*cia v. Apfel,* No. 97 Civ. 4035, 1998 WL 599714, *7 (S.D.N.Y. Sept. 10, 1998). This Court retains jurisdiction over this case for the enforcement of this Order and any future proceedings with respect to this application.

The Clerk of Court is directed to close this case.

SO ORDERED.